The opinion of the Court was delivered by
Poché, J.
The object of this suit is to annul and cancel three notes of $1000 each, secured by mortgage, executed on July 12th, 1876, and made payable one year after date, on the ground that said notes were made by plaintiff without consideration, aud through fear caused by threats, made by defendant Oteri, of killing plaintiff aud destroying his family.
The answer is a general denial, coupled with the averment that said notes were obtained from plaintiff for valuable consideration, aud without threats! or violence, with a demand in reconvention for judgment on the notes and mortgage. At the instance of plaintiff, the notes were sequestered at the Louisiana National Bank, where they had been deposited for collection by Oteri; and the bank is cited to appear.
Defendant appeals from a judgment maintaining plaintiff’s action, but rejecting his claim for damages, by reason of which plaintiff lias prayed for an amendment.
The record contains a volume of conflicting testimony, taking an immensely wide range, including scandalous and almost incredible stories of breach of trust, robbery, necromancy, deceitful friendship, conjugal infidelity and adultery, which appear absolutely marvelous on an issue presenting a single question of fact and of law.
Confining our efforts to the task of elucidating the facts which bear on the legal issues presented to our consideration, we have waded painfully through this mass of startling narratives, and have succeeded in bringing to judicial daylight the following as the only undisputed salient facts in the controversy:
*695 For many years previous to these present troubles, Couder and Oteri bad been very close and intimate friends; Oteri having been an inmate of Conder’s house, where he was married, and continued to live several months after his marriage.
Couder has been for several years a merchant, doing business as a retail dealer in crockery ware, in good pecuniary circumstances, and with a fair standing in the mercantile community; married and having several children.
Oteri is a merchant, a member of a firm doing a yery large business as importers of tropical fruits, and commanding large capital and great resources. He is shown to be a good citizen and a peaceable man.
On the 12th of July, 1876, they met, by previous appointment, at a notary’s office in this city, where these notes and an act of mortgage, prepared in advance by the notary, were signed by Couder, after taking full knowledge of the tenor and contents of both the notes and of the act of mortgage. The evidence is conflicting on all other points.
It is conceded by all parties, as well as established in law and jurisprudence, that under such circumstances, the burden of proving the want of consideration, and of showing the other elements of nullity, is itaposed on plaintiff, Couder.
His counsel contend, and the District Judge held, that Couder had fulfilled the requirements of the law in this connection, at least sufficiently to shift on Oteri the burden of proving the validity of his contract, for which they rely on the following circumstances:
That some time previous to the date of this contract, Oteri, who had been absent from the State on business, discovered on his return that he had been robbed of §5,000, which he had entrusted for safe keeping to his wife. That, joined by plaintiff in his investigation, he had discovered that Mrs. Oteri liad been robbed of the money by a wily necromancer, who had gained her. confidence. After such discovery, the robber was arrested, and he returned, in property and other valuables, about $2,000 of his ill-gotten booty. Couder charges that from those circumstances, Oteri, who suspected that he, Couder, had influenced Mrs. Oteri in favor of the conjurer’, conceived the idea of holding him responsible for the xxnrecovered balance of his money, to-wit: three thousand dollars, and adding to this'unjust suspicion, the jealous belief that Coxxder had also seduced his wife from her conjugal fidelity; Oteri became very violent and abusive of his former friend, and pxxblicly threatened to kill him and to destroy his family, as Conder had destroyed his, Oteri’s family.
Coxxder then charges that Oteri, having, after such threats, insisted on a three thoxxsand dollar mortgage, he, actuated through fear of assas-. *696 sination and great bodily harm, had consented to execute the contract which he now seeks to annul.
If the testimony of Couder, and of some of his witnesses, was entirely uncontradicted, and had satisfactorily established the truth of all these charges, we could not bring our minds to see therein, such violence and threats as the law contemplates as sufficient to vitiate and invalidate a contract, especially when it is evidenced by an authentic act.
Besides the testimony of Couder and of two women, whose testimony is so incredible as to have been disregarded by the District Judge, we find no testimony in the record showing that the violent language used, and the excited threats made, by Oteri against Couder, had any reference to, or connection with, the business transactions which culminated in the act of mortgage of July 12, 1876.
The record shows that those threats were made on the 29th of June, 1876, and satisfies us that they had reference to the suspicion of Oteri that Couder had been guilty of adultery with Mrs. Oteri, against whom he had filed a suit for divorce two days before, charging adultery between her and Couder, and in which suit, and for which charge, he subsequently obtained a judgment for divorce, which was rendered on March 26, 1877.
Under these, circumstances, Couder may be considered as very fortunate for having escaped with threats only.
Subsequent events show that even those threats, made by an outraged husband against his wife’s paramour, were not serious, and were never followed by the slightest attempt to put them into execution.
The record shows that on receiving information of Oteri’s threats, Couder, whom we concede not to be an example of personal or moral courage, at once called on the police authorities, and demanded their protection. Captain Malone, to whom the demand was made, being a mutual friend of the parties, quieted the fears of Couder, and offered his friendly interposition to effect a reconciliation between the two formerly close friends. And on the next evening, he and Oteri called in person at Couder’s house, where the two/oeshad a loug and private interview in Couder’s own sleeping apartment; after which, they rejoined Malone, with whom they took a glass of wine, parting as friends. As such they met at the notary’s office, where Couder went, unprotected by either the police or by trusted friends.
Under those circumstances, we would construe it a mockery of the serious provisions of our laws, which are intended to protect innocent parties from the burden of contracts forced upon them by the violence or the threats of the wrong-doer, if we should maintain plaintiff’s theory.
*697 Plaintiff relies, as an element of threat, on a letter elated June 27th, 1876, written to him by Oteri’s counsel, informing him that the writer had been employed to settle with Gouder business of great importance and of a very unpleasant character, and urging him, by reason of the delicate nature of the case, to call on the attorney, with a view to save annoyance, publicity, and costs, and impressing Couder with the earnestness of his client in demanding speedy redress.
In our view of the case, this letter is destructive of plaintiff’s entire theory of violence and threats. It shows that Oteri was seeking to enforce his rights, or claim redress for real or imaginary wrongs, through and by legal process, and that Couder could, with perfect safety to himself and to his family, settle all his differences and troubles with Oteri, by calling on the latter’s counsel.
It places the case- squarely under the excex>tions mentioned in Art. 1856 of the Civil Code, which provides that violence, used as a legal constraint, or threats of what the party had the legal right to do, cannot invalidate a contract.
Whether Oteri intended to claim damages from Couder for the seduction of Mrs. Oteri, or to hold him responsible as an accomplice of the conjurer, he was using threats through his counsel, of legal proceedings which he had the right to use, which would cause Couder annoyance, by publicity, or other inconveniences; and this showing excludes the idea of.a resort to violence and assassination, either by himself, or by the instrumentality of others, as charged by plaintiff. See the case of Benner vs. Van Norden, 27 A. 477.
Oteri introduced testinrony to show that the consideration of the note was a loan of $3,000 made to Couder, at divers times, in sums of $1200, $800, $600 and $400; and on this point the record teems with an avalanche of conflicting testimony, which we have read and analyzed.
But under our views of the case, and with our clear conclusion that Couder has utterly failed to cast sufficient doubt on the legality and validity of the contract, so as to shift the burden of evidence on Oteri, we find it unnecessary to express an opinion on that branch of.the case. Believing that the degree of violence or the character of threats, which in law vitiates a contract, must be considered and weighed, in reference to men of ordinary composure and nerve, and not in the scales of imaginative alarmists, and being thoroughly satisfied from the evidence that Couder was not actuated in executing this contract, by any fear of bodily harm to himself, or much less to his family, we are constrained to differ with our learned brother of the District Court in the conclusion which he reached.
It is, therefore, ordered, that the judgment appealed from be *698 annulled, avoided and reversed, and tliatplaiu tiff’s demand be rejected, and Ms action dismissed ; and it is further adjudged and decreed, that defendant, Oteri, recover judgment on bis reeonventional demand, on bis three notes of one thousand dollars each, with eight per cent, per annum interest from July 12, 1876, and with recognition of his mortgage under the Act of July 12, 1876, and that plaintiff pay all costs in both Courts.